UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CIRAS, LLC, | Case No.: 2:10-cv-02019-RLH-RJJ |
| Plaintiff, | **O R D E R** |
| vs. | (Motion to Sell Perishable Property–#40; Motion for Order Shortening Time–#41) |
| R. WAYNE ZIEGLER, an individual; and CARSON VALLEY GARDEN & RANCH CENTER, LLC, a Nevada limited liability company, | |
| Defendants. | |

Before the Court is Plaintiff/Judgment Creditor Ciras, LLC's **Motion to Sell Perishable Property** (#40, filed Apr. 13, 2011) and corresponding **Motion for Order Shortening Time** (#41, filed Apr. 13, 2011) based on Plaintiff's seizure of Defendants/Judgment Debtors R. Wayne Ziegler and Carson Valley Garden & Ranch Center, LLC's business property by writ of execution. The Court has also considered Defendants' Response (#42, filed Apr. 13, 2011) and Plaintiff's Reply (#44, filed Apr. 13, 2011).

///

///

1

AO 72
(Rev. 8/82)

**BACKGROUND**

This dispute arises from a breach of contract scenario. Plaintiff filed its Complaint (#1) on November 18, 2010. After Defendants' failure to respond, Plaintiff obtained a Default Judgment (#12) on January 11, 2011. Defendants filed a Motion for Relief from Default Judgement (#20), which the Court denied. (Dkt. #25, Order, Mar. 16, 2011.) Defendants have filed a Notice of Appeal (#29) with regard to the Court's denial.[1]

To recover on its judgment, Plaintiff requested and received writs of execution from the Clerk of the Court (Dkt. #16, #17), and executed a writ of attachment by arranging for the U.S. Marshals to seize Defendants' business property on April 2 and again on April 6. Defendants then filed an Objection to Attachment and Notice of Third-Party Claim (#26) alleging that Plaintiff executed the writ of attachment without the requisite notice and court approval. Their Objection asked the Court, among other things, to order Plaintiff to immediately return all items on consignment and all equipment subject to third-party claims and to direct Plaintiff to provide a plan of sale in accordance with Nevada law. Plaintiff filed the instant motions in response. The parties have since filed supplemental briefing on Defendants' Objection. (Dkt. #50, #51, #53.) For the reasons discussed below, the Court grants Plaintiff's motion.

**DISCUSSION**

As a preliminary matter, the Court must address Defendants' contention that Plaintiff improperly executed a writ of attachment against their business property. Defendants claim that the seizures were conducted pursuant to a fraudulent writ because Plaintiff did not follow the requirements set forth NRS Chapter 31 for writs of attachment. They now argue that this action must be nullified by returning all seized property to Defendants. Plaintiff maintains that it

---

[1] Although jurisdiction generally transfers to the Ninth Circuit upon appeal, a district court is permitted to act "in aid of the appeal, or to correct clerical mistakes, or in aid of execution of a judgment that has not been superseded, until the mandate has been issued by the court of appeals." *In re Thorp*, 655 F.2d 997, 998 (9th Cir. 1981); *accord Stein v. Wood*, 127 F.3d 1187, 1189 (9th Cir. 1997). Therefore, this Court retains jurisdiction over the parties' current dispute involving Plaintiff's efforts to collect on its judgment.

AO 72
(Rev. 8/82)

properly executed the writ of attachment pursuant to its writs of execution and instructions from the U.S. Marshals.

**I.      Writ of Attachment**

    **A.      Legal Standard**

Pursuant to Rule 69 of the Federal Rules of Civil Procedure, post-judgment enforcement proceedings must comply with the procedure of the state where the court is located. *Credit Suisse v. U.S.D.C. for Cent. Dist. of Cal.*, 130 F.3d 1342, 1344 (9th Cir. 1997). Specifically, Rule 69(a)(1) provides that the "procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Thus, the Ninth Circuit has applied state law to proceedings involving garnishment, mandamus, arrest, contempt of a party, and appointment of receivers when such actions are undertaken in aid of executing on a judgment. *Office Depot Inc. v. Zuccarini*, 596 F.3d 696, 699 (9th Cir. 2010). The Court therefore concludes that the Nevada statutes governing writs of attachment, NRS §§ 31.010-31.220, apply in this situation.

Pursuant to NRS § 31.010, a judgment creditor may "apply to the court for an order directing the clerk to issue a writ of attachment and thereby cause the property of the defendant to be attached as security for the satisfaction of any judgment." NRS § 31.010(1). This provision also allows a judgment creditor to obtain a writ of attachment *post*-judgment rather than limiting the relief to the typical pre-judgment writ. *LFC Marketing Group, Inc. v. Loomis*, 8 P.3d 841, 902 (Nev. 2000). NRS § 31.020 provides that an application for a writ of attachment must be accompanied by a plaintiff's affidavit, which must detail all facts showing grounds for attachment. If the plaintiff's affidavit and any additional evidence meets Chapter 31's requirements, the court shall issue an order directing the defendant or debtor to show cause why the order for attachment should not be issued. NRS § 31.024. However, if a writ of attachment is improperly issued (for

///

3

1  lack of notice, etc), NRS § 31.220 states that the court need not release the attached property as
2  long as the judgment creditor fixes the defect and court issues a new writ.

3  **B.     Analysis**

4        Plaintiff maintains that it complied with each of the Marshal's requirements for a
5  writ of attachment; thus, the seizure was valid.  For issuance of a writ of attachment, Nevada law
6  requires Plaintiff to show the Court that "extraordinary circumstances exist," NRS § 31.013(3),
7  which Plaintiff could not do without applying to the Court.  Although Plaintiff argues that its self-
8  issued writ of attachment was proper because the Marshal's office only required a docketed writ of
9  execution,  Plaintiff's end-run around Nevada law cannot be justified by its mere completion of an
10 agency's minimum requirements.  Moreover, this situation was not one in which Plaintiff could
11 have received a writ of attachment without notice.  *See*, *e.g.* NRS § 31.017.  Plaintiff should have
12 given Defendants the opportunity to show cause as to why the writ should not issue before
13 execution.  Thus, Plaintiff clearly deviated from Nevada law by executing a self-issued writ of
14 attachment without applying for such writ or giving Defendants notice and an opportunity to
15 respond.

16       Nevertheless, the Court need not order the property returned only to have Plaintiff
17 apply for, receive, and re-execute a proper writ.  Plaintiff may still correct their deficiency.
18 Defendants have now received notice of Plaintiff's intent to sell the property and they have
19 exercised their statutory right to respond.  Thus, it appears the Court simply needs to consider
20 whether "extraordinary circumstances exist" pursuant to NRS § 31.013.

21       Plaintiff has sufficiently shown the Court that a writ of attachment is proper in this
22 instance.  Defendants seemed to implicitly agree as much in their Objection because the only relief
23 they request for their own property is that Plaintiff be ordered to submit a "plan of sale."
24 Defendants' remaining contentions deal with the third-party claims. (*See* Dkt. #26, Objection Ex.
25 A, Zeigler Aff.)  However, Defendants lack standing to assert exemptions on behalf of third
26 parties.  *See* NRS §§ 31.010, 21.120(2) (providing third-parties asserting claims on a party's

AO 72
(Rev. 8/82)

property with a hearing to have the court determine title).

In their most recent briefing, Defendants argue that Plaintiff's seizure action must be nullified and all property returned. Even so, Defendants did not file a motion for stay pending appeal, post a supersedeas bond, or otherwise ask the Court to stall Plaintiff's execution on its judgment. To the contrary, Defendants' request for a plan of sale leads the Court to conclude that a sale is not only inevitable, but necessary to satisfy judgment. Thus, the Court finds that extraordinary circumstances exist and issuance of a writ of attachment is warranted.

**II. Request to Sell Perishable Property**

Among the seized items were several hundred trees and live plants. According to Defendants, a recent inventory of the trees counted over 600 trees, which he claims have a retail value of over $60,000 ($100 each). Plaintiff states that it incurs watering costs of $75 per day to maintain the "high maintenance" trees in sellable condition and approximately $400 per month in storage fees. Plaintiff further claims that the Department of Agriculture has informed its storage facility that a nursery license may be required to continue storage of the trees and live plants.

Despite its attachment and seizure of varied business property, Plaintiff did not ask the Court to sell any other property besides Defendants' trees and plants. However, Plaintiff did agree to post written notice of the sale for a one-week period and hold the proceeds in trust until the seizure issue is resolved.

**A. Legal Standard**

NRS §§ 31.120 and 21.130 allow for the sale of "perishable property." This phrase limits "the right to sell to such property as is necessarily subject to immediate decay." *Newman v. Kane*, 9 Nev. 234, 1874 WL 3947 (Nev. 1874) (finding that hay was not "perishable property" under the statute because hay could be preserved by bailing). Thus, the Nevada Supreme Court has stated that attached property is not "perishable property" and is wrongfully sold if it could be preserved with ordinary and reasonable care, considering the circumstances. *Id.*; *see also Watson v. Schmidt*, 135 So. 232, 233 (La. 1931) (citing *Newman*) ("Property of a perishable nature … is

5

1  that class of property which may be expected to decay or be destroyed, or to greatly depreciate, by
2  natural process, such being its nature, pending the time ordinarily required for the appeal.") In
3  determining whether the property is perishable, the court only considers the nature of the property,
4  not the expense in preserving it. *Newman*, 1874 WL 3947, at *2–3.

5  Pursuant to NRS § 31.130, when the court is satisfied that a sale of attached
6  property will serve the parties' interests, "the court or judge may order such property to be sold in
7  the same manner as property is sold under an execution, and the proceeds to be deposited in the
8  court" to satisfy judgment. *Id.* The adverse party must be given notice of a sale under these
9  circumstances. *Id.*

10  **B.  Analysis**

11  Defendants' trees and live plants do not qualify as perishable property necessitating
12  immediate sale. Of course, trees and live plants will eventually perish—like all living things—but
13  this perishable nature does not automatically place them in a "class of property which may be
14  expected to decay or be destroyed, or to greatly depreciate, by natural process." *Watson*, 135 So. at
15  233. Plaintiff has preserved the property thus far using ordinary and reasonable care, *i.e.* watering,
16  and could continue their current maintenance regimen. Therefore, the trees and plants are not
17  perishable property that would justify immediate sale during the pendency of appeal.

18  Nevertheless, because Plaintiff has already obtained a valid judgment, the Court
19  may aid Plaintiff in execution of its judgment by allowing it to sell the trees and plants. The
20  question of whether the items are perishable is irrelevant. The real question is whether the Court
21  should allow the sale of Defendants' property during the pendency of appeal. As previously noted,
22  Defendants did not file a motion to stay proceedings or obtain a supersedeas bond. Plaintiff has
23  informed the Court of a foreclosure sale on the nursery property. Under these circumstances, the
24  Court is satisfied that a sale of the trees and plants will serve the parties' interests and assist
25  Plaintiff in the satisfaction of judgment. Accordingly, the Court grants Plaintiff's motion.
26  ///

AO 72
(Rev. 8/82)

### III. Motion for Order Shortening Time

Due to Defendants' scheduling conflicts, the Court vacated the original hearing date set for Defendants' Objections. (Dkt. #47, Order.) Because this written order now rules on Plaintiff's Motion to Sell Perishable Property (#40), the Court denies Plaintiff's Motion for Order Shortening Time (#41) as moot.

### CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Plaintiff's Motion to Sell Perishable Property (#40) is GRANTED. Plaintiff will post notice for one week prior to the sale and deposit the proceeds with the Court after the sale is complete.

IT IS HEREBY ORDERED that Plaintiff's Motion for Order Shortening Time (#41) is DENIED as moot.

Dated: May 19, 2011

*Roger L. Hunt*
**ROGER L. HUNT**
**United States District Judge**